# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SUSAN JUNG | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-787 |
| | § | Judge Mazzant |
| 24 HOUR FITNESS USA, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant 24 Hour Fitness USA, Inc.'s Corrected Motion for Partial Summary Judgment (Dkt. #24). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted in part and denied in part (Dkt. #24).

## BACKGROUND

Defendant is a corporation that operates gyms (Dkt. #4; Dkt. #5; Dkt. #6). Plaintiff Susan Jung was a member of Defendant's gym located in Lewisville, Texas (Dkt. #24-3 at p. 1). Plaintiff alleges that on May 3, 2017, she arrived at the gym and placed her belongings in a locker (Dkt. #4 ¶ 7). In the locker, Plaintiff discovered and removed a set of keys (Dkt. #4 ¶ 7). Plaintiff sealed her belongings in the locker with a lock and returned the keys to Defendant's employee—Zach turner—at the front desk (Dkt. #4 ¶ 7). Plaintiff then exercised in the gym (Dkt. #4 ¶ 7).

During Plaintiff's workout, another gym member returned to the gym searching for the keys left inside Plaintiff's locker (Dkt. #4 ¶ 8). Although Plaintiff returned the keys previously, Defendant's employees cut Plaintiff's lock from the locker to search for the keys (Dkt. #4 ¶ 8). After failing to find the keys inside the locker, Defendant's employees left Plaintiff's cut lock hanging on the locker:



(Dkt. #4 ¶ 8; Dkt. #24-5 at p. 14).

When Plaintiff returned to her locker and discovered the cut lock, she went to the front desk to ask why Defendant's employees cut the lock (Dkt. #4 ¶ 8). After an explanation, Plaintiff retrieved her belongings from the locker and discovered her wallet—containing her driver's license, credit card, and other items—was missing (Dkt. #4 ¶ 9). Plaintiff called the police who generated a report on the incident (Dkt. #4 ¶ 9).

Plaintiff filed suit against Defendant on October 4, 2017 (Dkt. #4). Plaintiff alleges invasion of privacy, negligence, and gross negligence claims against Defendant, and Plaintiff seeks actual, mental anguish, emotional distress, and exemplary damages (Dkt. #4 ¶¶12–13). Defendant removed the case to this Court on November 3, 2017 (Dkt. #1).

Defendant filed its Corrected Motion for Partial Summary Judgment on April 17, 2018 (Dkt. #24). Plaintiff filed a response to the motion on May 7, 2018 (Dkt. #25). Defendant filed a reply to the motion on May 16, 2018 (Dkt. #27).

## LEGAL STANDARD

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the

nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

Defendant moves for partial summary judgment arguing: (1) a release-of-liability provision in Plaintiff's membership agreement ("Agreement") bars Plaintiff's negligence claim; (2) Plaintiff cannot maintain a claim for mental anguish and emotional distress damages under her negligence and gross negligence claims; (3) summary judgment is warranted on Plaintiff's gross negligence claim because Texas law prohibits claims for exemplary damages in cases involving third-party-criminal acts; (4) summary judgment is warranted on Plaintiff's gross negligence claim because there is no evidence of gross negligence; and (5) Plaintiff cannot recover exemplary damages related to her invasion of privacy claim (Dkt. #24 at pp. 4–10). The Court considers each argument in turn.

Before turning to Defendant's arguments, the Court addresses a separate issue. Plaintiff contends Defendant's motion is premature because the parties have not completed discovery or

resolved certain discovery disputes (Dkt. #25 at pp. 1–2). The discovery deadline in this case expired on May 25, 2018—eighteen days after Plaintiff filed her response (Dkt. #19; Dkt. #25). During the five months between the filing of the motion and the issuance of this Order, the parties did not bring any discovery disputes to the Court's attention or supplement the motion, response, or reply with newly discovered evidence. Accordingly, the Court assumes the parties resolved the discovery disputes and any newly discovered information was not relevant to the motion at issue. As a result, the Court finds Defendant's motion is ripe for consideration.

### I. Plaintiff's Negligence Claim

Defendant first argues that a release-of-liability provision in Section 10 of Plaintiff's Agreement bars Plaintiff's negligence claim (Dkt. #24 at pp. 4–6).[1] Plaintiff responds that Section 10's release applies only to physical injuries and does not satisfy the fair notice requirements under Texas law (Dkt. #25 at p. 4). Plaintiff also claims she never received the page of the Agreement containing Section 10 (Dkt. #25 at p. 3).

Under Texas law, contractual release is an affirmative defense. TEX. R. CIV. P. 94. By definition, "[a] release . . . is an agreement by one party to surrender its own cause of action against the other party." *M.T.D. Envtl., L.L.P. v. City of Midland*, 315 S.W.3d 606, 609 (Tex. App.— Eastland 2010, pet. denied) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). A valid release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dresser*, 853 S.W.2d at 508 (citing *Hart v. Traders & General Ins. Co.*, 189

---

1. Defendant originally argued that Sections 5(c) and 10 of the Agreement barred Plaintiff's negligence claim (Dkt. #24 at pp. 4–6). In its reply, Defendant withdrew its argument concerning Section 5(c) of the Agreement (Dkt. #27 at p. 2 n.2)

5

S.W.2d 493, 494 (Tex. 1945)); *Blockbuster, Inc. v. C-Span Entm't, Inc.*, 276 S.W.3d 482, 489 (Tex. App.—Dallas 2008, pet. granted).

Due to the extraordinary shifting of risk created by pre-injury releases, Texas law imposes fair notice requirements on such agreements. *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 569 (Tex. App.—San Antonio 2004, no pet.) (citing *Dresser*, 853 S.W.2d at 508). To provide fair notice, the release must satisfy the express negligence doctrine and be conspicuous. *Id.* (citing *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004)). "[T]he express negligence doctrine[ ] requires that 'the intent of the parties must be specifically stated in the four corners of the contract.'" *Reyes*, 134 S.W.3d at 192 (quoting *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex. 1987)). "Language that specifically refers to 'any negligent act of [the released party]' may be sufficient to define the parties' intent." *Quintana v. CrossFit Dall., L.L.C.*, 347 S.W.3d 445, 450 (Tex. App.—Dallas 2011, no pet.) (quoting *Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 726 (Tex. 1989)). The conspicuousness requirement "mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he [or she] looks at it.'" *Id.* (quoting *Dresser*, 853 S.W.2d at 508). "Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself." *Id.* (citing *Littlefield v. Schaefer*, 955 S.W.2d 272, 274–75 (Tex. 1997)). "A [release] which fails to satisfy either of the fair notice requirements . . . is unenforceable as a matter of law." *Id.* (citing *Dresser*, 853 S.W.2d at 509–10; *U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789, 792 (Tex. App.—Houston [14th Dist.] 1995, writ denied)). Whether a provision provides fair notice is a question of law. *Quintana*, 347 S.W.3d at 450 (citing *Dresser*, 853 S.W.2d at 509).

Section 10 of Plaintiff's Agreement reads:

**10. RELEASE OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNIFICATION**

Using the 24 Hour Fitness USA, Inc. (24 Hour) facilities involves the risk of injury to you or your guest, whether you or someone other than you causes it. Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death. **In consideration of your participation in the activities and use of the facilities offered by 24 Hour, you understand and voluntarily accept this risk and agree that 24 Hour . . . will not be liable for any injury, including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you . . . resulting from the negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities whether related to exercise or not.**

(Dkt. #24-3 at p. 6) (formatted in original).

Plaintiff sued Defendant for negligence resulting from "cutting Plaintiff's lock, searching her locker, and then leaving her property vulnerable without providing additional security for that property" and Plaintiff seeks "actual damages, as well as mental anguish and emotional damages." (Dkt. #4 ¶ 13). The Court applies the fair notice requirements to determine whether Plaintiff released her negligence claim against Defendant.

### A. Express Negligence Doctrine

"[T]he express negligence doctrine[ ] requires that 'the intent of the parties must be specifically stated in the four corners of the contract.'" *Reyes*, 134 S.W.3d at 192 (quoting *Ethyl Corp.*, 725 S.W.2d at 708). Defendant argues Section 10 plainly bars Plaintiff's negligence claim (Dkt. #27 at p. 2). Plaintiff contends Section 10 "is broadly written, but clearly was intended to apply to physical injury." (Dkt. #25 at p. 4).

As cited above, Section 10 is tilted, "**RELEASE OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNIFICATION**" and provides, "**you understand and voluntarily accept this risk and agree that 24 Hour . . . will not be liable for any injury, including, without**

7

**limitation, personal, bodily, or mental injury, economic loss or any damage to you . . . resulting from the negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities whether related to exercise or not.**" (Dkt. #24-3 at p. 6).

Section 10 explicitly states that Defendant is not liable for any injury—including mental or economic injuries—resulting from Defendant's negligence, relating to exercise or not. Therefore, the parties' intent to release Defendant from liability for its negligence causing mental or economic injuries is specifically stated in the four corners of the Agreement. *See Quintana*, 347 S.W.3d at 450 (quoting *Atl. Richfield Co.*, 768 S.W.2d at 726) ("Language that specifically refers to 'any negligent act of [the released party]' may be sufficient to define the parties' intent."). As a result, the Agreement satisfies the express negligence doctrine.

### B. Conspicuousness

The conspicuousness requirement "mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he [or she] looks at it.'" *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508). "Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself." *Id.* (citing *Littlefield*, 955 S.W.2d at 274–75).

Plaintiff argues Section 10 is not conspicuous because it appears on the final page of the six-page Agreement and its typeface is small (Dkt. #25 at p. 4). Plaintiff correctly notes that Section 10 appears on the final page of the Agreement (Dkt. #24-3 at p. 6). However, Plaintiff does not acknowledge that the first page of the Agreement contains the following warning:

> **THIS AGREEMENT INCLUDES A RELEASE OF LIABILITY AND ASSUMPTION OF RISK PROVISION IN SECTION 10.**

8

(Dkt. #24-3 at p. 1) (formatted in original). The text of this warning is bolded and capitalized to draw a reader's attention.

The release appears in a box that separates it from other sections of the Agreement and is titled, "**RELEASE OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNIFICATION**." (Dkt. #24-3 at p. 6). As cited, the title of the release is underlined, bolded, and capitalized (Dkt. #24-3 at p. 6). No other title in the Agreement is formatted like the title of the release. Below the title, the text of the release is bolded (Dkt. #24-3 at p. 6). Although the font size of the release is not large, it is not the smallest font size found in the Agreement (Dkt. #24-3). Considering these factors, the Court finds that the release is conspicuous because it would attract the attention of a reasonable person when he or she viewed the Agreement. *See Reyes*, 134 S.W.3d at 192. Consequently, the release contained in Section 10 meets the fair notice requirements and is enforceable under Texas law as it satisfies the express negligence doctrine and is conspicuous. *See Tamez*, 155 S.W.3d at 569.

The Court's finding is not novel. At least two other courts in this Circuit have reached similar conclusions concerning releases found in Defendant's membership agreements. In *Ramirez*, Ramirez suffered an injury at one of Defendant's Texas facilities and sued Defendant asserting negligence claims. *Ramirez v. 24 Hour Fitness USA, Inc.*, CIV.A. H-12-1922, 2013 WL 2152113, at *1 (S.D. Tex. May 16, 2013), *aff'd*, 549 F. App'x. 262 (5th Cir. 2013). Defendant moved for summary judgment arguing the release contained in Ramirez's membership agreement barred her negligence claims. *Id.* The release in Ramirez's membership agreement contained nearly identical language and formatting to Section 10:

> **In consideration of your participation in the activities offered by 24 Hour, you understand and voluntarily accept this risk and agree that 24 Hour . . . will not be liable for any injury, including, without limitation, personal, bodily, or mental injury, economic**

9

> **loss or any damage to you . . . resulting from the negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities <u>whether related to exercise or not</u>.**

*Id.* (formatted in original exhibit). Applying the express negligence doctrine, the court concluded, "the intent of the parties to bar actions such as those brought by Ramirez is 'specifically stated in the four corners of the contract.'" *Id.* at *4 (quoting *Reyes*, 134 S.W.3d at 192). The Court also found the release conspicuous. *Id.* at *5. As the release satisfied the fair notice requirements, the court found the release enforceable and granted summary judgment on Ramirez's negligence claims. *Id.* at *6.

In *Potter*, Potter suffered an injury at one of Defendant's Texas facilities and subsequently died. *Potter v. 24 Hour Fitness USA Inc.*, 3:12-CV-453-P, 2014 WL 11633691, at *1 (N.D. Tex. June 6, 2014), *aff'd*, 597 F. App'x. 796 (5th Cir. 2015). Members of Potter's family sued Defendant asserting a negligence claim. *Id.* at *1, 5. The release in Potter's membership agreement also contained similar language and formatting to Section 10:

> **<u>you</u> . . . <u>agree that 24 Hour</u> . . . <u>will not be liable for any injury,</u> including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you . . . resulting from any negligence of 24 Hour or 24 Hour's behalf or anyone using the facilities <u>whether related to exercise or not</u>.**

*Id.* at *6 (formatted in original exhibit). Although the court did not address the fair notice requirements, it did find the release barred Potter's negligence claim as a matter of law. *Id.* at *7.

### C. Renewal Agreement and Lack of Knowledge

Plaintiff argues two additional points to avoid the release: (1) the release appears in a renewal agreement, not her original contract; and (2) Plaintiff never received the pages of the Agreement containing the release (Dkt. #25 at p. 3). Concerning her first point, Plaintiff explains that the Agreement containing the release is a renewal agreement, not her original contract with

10

Defendant (Dkt. #25 at p. 3). Plaintiff does not explain why her original contact is relevant. The Agreement contains a merger clause which replaced any prior agreements between the parties (Dkt. #24-3 at p. 4, ¶ 5(d)); *City of Oak Ridge N. v. Mendes*, 339 S.W.3d 222, 232 (Tex. App.—Beaumont 2011, no pet.) (quoting *Smith v. Smith*, 794 S.W.2d 823, 827–28 (Tex. App.—Dallas 1990, no writ)) ("'Merger, with respect to the law of contracts, refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties.'"). Plaintiff does not challenge the merger clause. Therefore, the Agreement governed the parties' relationship regardless of the original contract's terms.

Addressing her second point, Plaintiff testifies in an attached affidavit that she did not receive any portion of the Agreement beyond the first two pages:

> 4. I never saw the release-of-liability provision in my 24 Hour Fitness Membership Agreement, nor was it brought to my attention. I was asked to sign only the first two pages. To the best of my knowledge, the pages after the first two pages bearing my signature were not attached to the contract I signed.
>
> 5. I did not see any pages to my contract other than the first two pages that I signed.

(Dkt. #25-2 ¶¶ 4–5). Plaintiff admits she viewed and signed the first two pages of the Agreement. As discussed previously, the first page of the Agreement contains the following warning and additional text:

> **THIS AGREEMENT INCLUDES A RELEASE OF LIABILITY AND ASSUMPTION OF RISK PROVISION IN SECTION 10**. By signing below,
> 1. You acknowledge and agree that you have read this agreement and <u>you agree to all the terms on all pages of this agreement</u> and acknowledge that you have received a copy of it and the membership policies.
> 2. You consent to the use of an electronic signature to record your commitment to the terms of this Agreement.

**NOTICE TO PURCHASER: DO NOT SIGN THIS CONTRACT UNTIL YOU READ IT OR IF IT CONTAINS BLANK SPACES.**

(Dkt. #24-3 at p. 1) (formatted in original). The first page of the Agreement instructed Plaintiff that Section 10 contained a release, and Plaintiff should not sign the Agreement until she read all of its pages. Plaintiff cannot now escape the release by arguing she did not read or receive Section 10 when she viewed and signed a page notifying her to read Section 10 before signing the Agreement. *In Estate of Sheshtawy*, 478 S.W.3d 82, 87 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005)) ("Absent allegations of fraud, misrepresentation, or deceit, a party is bound by the terms of the contract she signed, regardless of whether she read it or believed it had different terms."). Accordingly, Plaintiff's additional arguments do not inhibit the enforcement of the release.

### D. Release

Plaintiff sued Defendant for negligence resulting from "cutting Plaintiff's lock, searching her locker, and then leaving her property vulnerable without providing additional security for that property" and Plaintiff seeks "actual damages, as well as mental anguish and emotional damages." (Dkt. #4 ¶ 13). Pursuant to the release, Plaintiff agreed that Defendant would not be liable for any injury—including mental or economic loss injuries—resulting from Defendant's negligence (Dkt. #24-3 at p. 6). The release is valid and enforceable under Texas law because it satisfies the fair notice requirements and, therefore, Plaintiff's negligence claim is barred by the release. Accordingly, the Court **GRANTS** summary judgment against Plaintiff on her negligence claim.

## II. Plaintiff's Gross Negligence Claim

The dismissal of Plaintiff's negligence claim does not necessarily warrant the dismissal of her gross negligence claim. *See Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 924 (Tex.

App.—Dallas 2013, no pet.) ("There certainly are circumstances when negligence and gross negligence claims cannot be separated legally. Those circumstances are not presented in the context of a pre-injury, general negligence release."). As a result, the Court now considers Defendant's summary judgment arguments concerning Plaintiff's gross negligence claim.

Defendant moves for summary judgment on Plaintiff's gross negligence claim arguing: (1) Plaintiff cannot maintain a claim for mental anguish and emotional distress damages under her gross negligence claim; (2) summary judgment is warranted on Plaintiff's gross negligence claim because Texas law prohibits claims for exemplary damages in cases involving third-party-criminal acts; and (3) summary judgment is warranted on Plaintiff's gross negligence claim because there is no evidence of gross negligence (Dkt. #24 at pp. 4–10).

The Court will not grant summary judgment pursuant to Defendant's first and third arguments. After a careful review of the record, the Court is convinced a genuine issue of material fact exists on Plaintiff's gross negligence claim. The Court is also convinced that a genuine issue of material fact exists on Plaintiff's ability to seek mental anguish and emotional distress damages under her gross negligence claim as a reasonable jury could find ill-will, animus, or a design to harm Plaintiff personally from the evidence presented. *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 757 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("[W]here a claim of mental anguish is based solely upon property damage resulting from gross negligence, recovery is contingent upon evidence of some ill-will, animus, or design to harm the plaintiff personally.").

Concerning Defendant's second argument, the Texas Civil Practice and Remedies Code provides, "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of

another." Tex. Civ. Prac. & Rem. Code § 41.005(a). The statute provides one relevant exception to the exemption, "The exemption provided by Subsection (a) does not apply if . . . the criminal act was committed by an employee of the defendant." Tex. Civ. Prac. & Rem. Code § 41.005(b). This exception applies if:

> (1) the principal authorized the doing and the manner of the act;
>
> (2) the agent was unfit and the principal acted with malice in employing or retaining him;
>
> (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or
>
> (4) the employer or a manager of the employer ratified or approved the act.

Tex. Civ. Prac. & Rem. Code § 41.005(c).

The Court will not grant summary judgment on Plaintiff's gross negligence claim pursuant to Section 41.005 for two reasons. First, neither party offers evidence concerning whether a third-party or one of Defendant's employees stole Plaintiff's wallet (Dkt. #24 at pp. 7–8; Dkt. # 25 at p. 8). Consequently, the Court cannot determine whether the exemption or exception of Section 41.005 applies. Second, "a finding of gross negligence is relevant only to an assessment of exemplary damages, and recovery of actual damages is a prerequisite to receipt of exemplary damages under Texas law." *Potharaju v. Jaising Mar., Ltd.*, 193 F. Supp. 2d 913, 920 (E.D. Tex. 2002) (citing *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 641 (E.D. Tex. 1997)); *see also Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 804 (5th Cir. 2018) (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995)). "Moreover, '[r]ecovery of exemplary damages requires a finding of an independent tort with accompanying actual damages.'" *Potharaju*, 193 F. Supp. 2d at 920 (quoting *Riley*, 973 F. Supp. at 642); *see also Davis*, 904 S.W.2d at 665 (citations omitted). Therefore, the Court believes Defendant's argument concerning Section

41.005 is premature because the decision is only relevant if Plaintiff establishes actual damages under her invasion of privacy claim. As a result, the Court will not grant summary judgment on Plaintiff's gross negligence claim at this time.

### III. Exemplary Damages under Plaintiff's Invasion of Privacy Claim

Defendant contends Plaintiff cannot recover exemplary damages related to her invasion of privacy claim (Dkt. #24 at p. 10). Specifically, Defendant argues Plaintiff does not allege malice in her complaint and, even if she did, "the act of opening Plaintiff's locker was not directed because of any malicious intent towards Plaintiff . . . ." (Dkt. #24 at p. 10). Plaintiff responds, "Malice is not a requirement but an alternative method to justify exemplary damages." (Dkt. #25 at p. 11).

An action for invasion of privacy may be brought to recover both actual and punitive damages. 59 Tex. Jur. 3d Privacy § 6 (citing *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973)). A finding of malice supports an award of exemplary damages under an invasion of privacy claim. *Nat'l Bonding Agency v. Demeson*, 648 S.W.2d 748, 751 (Tex. App.—Dallas 1983, no writ), *abrogated on other grounds*, *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994); *K-Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 639 (Tex. App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e. sub nom.*, *Trotti v. K-Mart Corp. No. 7441*, 686 S.W.2d 593 (Tex. 1985). "'Malice' means a specific intent by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code § 41.001(7).

Defendant correctly notes that Plaintiff does not plead "malice" in her Complaint. (Dkt. #4). However, Plaintiff specifically pleads that she seeks exemplary damages under her invasion of privacy claim and alleges, "Defendant's employees['] . . . invasion was highly offensive and would realistically cause a sense of outrage to a person of normal sensibilities." (Dkt. #4 at pp. 3–4). The Court believes Plaintiff's Complaint provides Defendant fair notice of

15

her claim, and Plaintiff's failure to specifically state "malice" is not dispositive of her ability to seek exemplary damages under her invasion of privacy claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009). Further, as previously noted, a reasonable jury could find evidence that Defendant's employees acted with ill-will, animus, or a design to harm Plaintiff personally based upon the evidence before the Court. Examining the same evidence, a reasonable jury could find that Defendant's employees acted with malice when they cut Plaintiff's lock and left the lock hanging from the locker, with Plaintiff's valuables inside. Consequently, the Court finds a genuine issue of material fact exists on Plaintiff's ability to recover exemplary damages under her invasion of privacy claim.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Corrected Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** (Dkt. #24). Specifically, the Court **GRANTS** summary judgment on Plaintiff's negligence claim pursuant to the release found in Section 10 of Plaintiff's membership agreement. The Court **DENIES** summary judgment on Plaintiff's gross negligence claim and Plaintiff's ability to seek exemplary damages under her invasion of privacy claim.

**SIGNED** this 17th day of October, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE