# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SUSAN JUNG | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-787 |
| | § | Judge Mazzant |
| 24 HOUR FITNESS USA, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant 24 Hour Fitness USA, Inc.'s Renewed Motion for Judgment as a Matter of Law (Dkt. #73) and, alternatively, Motion for New Trial (Dkt. #74).[1] Having considered the motions and the relevant pleadings, the Court finds that Defendant's renewed motion for judgment as a matter of law should be granted in part and denied in part and Defendant's motion for new trial should be denied as moot.

## BACKGROUND

### I. Factual Background

Defendant is a corporation that operates gyms. Plaintiff Susan Jung was a member of Defendant's gym located in Lewisville, Texas. On May 3, 2017, Plaintiff arrived at the gym and placed her belongings in a locker. In the locker, Plaintiff discovered and removed a set of keys. Plaintiff sealed her belongings in the locker with a lock and returned the keys to Defendant's employee—Zach Turner—at the front desk. Plaintiff then exercised in the gym.

During Plaintiff's workout, another gym member returned to the gym searching for the keys left inside Plaintiff's locker. Although Plaintiff previously returned the keys to the front desk, Zach Turner directed another employee to cut Plaintiff's lock from Plaintiff's locker to

---

1. Neither party ordered a transcript of the trial. The parties instead rely on their recollection of the trial. Therefore, the Court rules on Defendant's motions without the assistance of the trial record.

search for the keys. After failing to find the keys inside the locker, Defendant's employees left Plaintiff's cut lock hanging on the locker:



(Dkt. #4 ¶ 8; Dkt. #24-5 at p. 14).

When Plaintiff returned to her locker and discovered the cut lock, she went to the front desk to ask why Defendant's employees cut the lock. After an explanation, Plaintiff retrieved her belongings from the locker and discovered that her wallet—containing her driver's license, debit and credit cards, and other items—was missing. Plaintiff called the police who generated a report on the incident.

## II. Procedural History

Plaintiff filed suit against Defendant on October 4, 2017 (Dkt. #4). Plaintiff alleged invasion of privacy, negligence, and gross negligence claims against Defendant, and Plaintiff sought actual, mental anguish, emotional distress, and exemplary damages (Dkt. #4 ¶¶12–13). Defendant removed the case to this Court on November 3, 2017 (Dkt. #1). On October 17, 2018, the Court granted in part and denied in part a motion for summary judgment filed by Defendant (Dkt. #28). Specifically, the Court granted summary judgment on Plaintiff's negligence claim

pursuant to a valid and enforceable negligence release found in Plaintiff's membership agreement (Dkt. #28 at pp. 5–12, 16). The Court denied Defendant's request for summary judgment on Plaintiff's remaining claims (Dkt. #28 at p. 16).

### III. Jury Trial and Verdict

On March 18 and 19, 2019, the parties tried the remaining claims to a jury (Dkt. #62; Dkt. #63). At the end of the trial, the jury returned a verdict finding:

**Invasion of Privacy Questions**

(1) Defendant intentionally intruded on Plaintiff's solitude, seclusion, or private affairs in a manner that would be highly offensive to a reasonable person (Dkt. #68, Question 1).

(2) Defendant did not act with malice—giving rise to exemplary damages—when it intruded on Plaintiff's solitude, seclusion or private affairs or concerns (Dkt. #68, Question 2).

**Negligence/Gross Negligence Questions**

(1) Defendant's negligence proximately caused the loss of Plaintiff's property from the gym locker (Dkt. #68, Question 3).[2]

(2) The loss of Plaintiff's property resulted from gross negligence attributable to Defendant (Dkt. #68, Question 4).

**Damages**

(1) The jury awarded Plaintiff $200.00 for the market value of Plaintiff's lost property (Dkt. #68, Question 5).

(2) The jury awarded no damages for the alleged mental anguish suffered by Plaintiff due to Defendant's actions (Dkt. #68, Question 6).

(3) The jury awarded Plaintiff $35,000.00 in exemplary damages resulting from Defendant's gross negligence (Dkt. #68, Question 8).

---

2. Plaintiff could not recover on her negligence claim due to the Court's summary judgment order (*See* Dkt. #28 at pp. 5–12). However, the Court submitted the negligence question as a predicate for the gross negligence question.

## IV. Post-trial Motions

On April 5, 2019, the Court entered judgment on the jury's verdict (Dkt. #72). On May 3, 2019, Defendant filed the motions at issue (Dkt. #73; Dkt. #74). On May 14, 2019, Plaintiff filed a joint response to Defendant's motions (Dkt. #75). On May 21, 2019, Defendant filed replies in support of its motions (Dkt. #76; Dkt. #77). Consequently, Defendant's motions are ripe for review.

**LEGAL STANDARD**

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court should properly ask whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." FED. R. CIV. P. 50(b); *see also Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004). The decision to grant such a motion lies not within a court's discretion, but is rather "'a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury.'" *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994) (quoting *In re Letterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 972 (5th Cir. 1986). Under Fifth Circuit law, a court should be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless substantial evidence does not support the findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelming in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation omitted). However, "[t]here must be

more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## ANALYSIS

### I. Defendant's Motion for Judgment as a Matter of Law

Defendant moves for judgment as a matter of law asking the Court to set aside the exemplary and actual damages awards contending: (a) Texas Civil Practice and Remedies Code § 41.005(a) precludes an award of exemplary damages; (b) the gross negligence found by the jury cannot be imputed on Defendant; (c) Plaintiff did not prove the objective or subjective components of her gross negligence claim; and (d) the Court's summary judgment order precludes the award of actual damages (Dkt. #73 pp. 1–2). The Court addresses each argument in turn.

### A. Texas Civil Practice and Remedies Code § 41.005(a)

Defendant first contends that Texas Civil Practice and Remedies Code § 41.005(a) prevents the Court from awarding exemplary damages (Dkt. #73 at pp. 2–8).[3] Section 41.005(a) provides, "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another."

#### i. Section 41.005(a) Applies to Plaintiff's Claims

The parties' first dispute whether Section 41.005(a) applies in this case. Defendant contends Section 41.005(a) requires the Court to set aside the exemplary damages award. It is difficult for the Court to interpret Plaintiff's response (Dkt. #75 at pp. 8–9). On the one hand, Plaintiff appears to argue that there is no criminal act implicated in this case. On the other hand, Plaintiff seems to contend that the Court may separate the criminal act from Defendant's conduct to avoid Section 41.005(a).

#### a) A Criminal Act?

Plaintiff first appears to argue that Section 41.005(a) does not apply because Plaintiff did not implicate a criminal act in her pleadings or during trial:

> But to what criminal act does Defendant refer? The act about which Plaintiff complained was the opening of her locker which was authorized by Defendant's manager, Zach Turner. This is a grossly negligent act under the circumstances and without taking precautions to safeguard her property.

(Dkt. #75 at p. 8). The Court cannot agree with Plaintiff for two reasons.

First, Plaintiff pleaded more than simply "the opening of her locker" harmed her. In her Second Amended Complaint, Plaintiff alleged, "As a result of Defendant's negligence, Plaintiff's

---

3. Defendant raised a similar argument at summary judgment. The Court did not grant summary judgment pursuant to Section 41.005(a) as the Court found Defendant's argument premature (Dkt. #28 at pp. 14–15).

personal property was stolen and she suffered actual damages, as well as mental anguish and emotional damages." (Dkt. #4 ¶ 13). Moreover, in the Final Pretrial Order, Plaintiff alleged:

> When Ms. Jung returned to her locker, several items had been taken, including her expensive wallet, credit cards, a cross necklace, and her I.D. Ms. Jung suffered emotional distress, fear, and embarrassment besides her loss of property.

(Dkt. #56 at p. 2) (*See also* Dkt. #73 at pp. 3–4). Accordingly, Plaintiff directly implicated a criminal act in her pleadings.

Second, Plaintiff recovered damages resulting from the criminal act. Plaintiff sought actual and mental anguish damages resulting from the theft of her property (Dkt. #4 ¶¶ 11–13). At trial, Plaintiff testified to the value of her stolen property and that the theft of her wallet—containing her Driver's License and financial cards—caused her mental anguish as she worried that the thief might steal her identity. The jury awarded Plaintiff $200.00 representing the "market value of the property Plaintiff . . . lost from the gym locker." (Dkt. #68, Questions 3 and 5). As Plaintiff sought and recovered damages resulting from the theft of her personal property, Plaintiff cannot now argue that she did not implicate a criminal act in this case.

### b) Concurrent Cause

Plaintiff next seems to contend that the Court can separate the criminal theft from Defendant's conduct and award exemplary damages based solely on Defendant's conduct. Other cases suggests the Court cannot do so. Multiple courts have held that Section 41.005(a) precludes exemplary damages awards when a defendant and criminal's acts concurrently cause harm to a plaintiff. *See Miles v. Jerry Kidd Oil Co.*, 363 S.W.3d 823, 826 (Tex. App.—Tyler 2012, no pet.) ("We construe Section 41.005 to preclude punishing a defendant for harm resulting from a criminal act of a third party when that defendant's actions are a concurrent cause of the harm."); *accord Kinney v. Brink's Inc.*, 4:15-CV-03512, 2018 WL 375393, at *2 (S.D.

7

Tex. Jan. 11, 2018) (citing *Miles*, 363 S.W.3d at 823); *Bhatti v. Concepts Am. Inc.*, 3:14-CV-3445-L, 2016 WL 3880747, at *17 (N.D. Tex. July 18, 2016) (citing *Miles*, 363 S.W.3d at 824). The concurrent causes found in cases applying Section 41.005(a) are similar to the concurrent causes found in this case.

- *Miles*, 363 S.W.3d at 824: the defendant's conduct (not having enough change in the store) exposed its employee to danger (walking across a busy roadway to obtain change) that resulted in harm to the employee (being struck and killed by a drunk driver).

- *Bhatti*, 2016 WL 3880747, at *2, 16: the defendant's conduct (serving alcohol to a patron and watching as the patron became increasingly aggressive toward the plaintiff) exposed the plaintiff to danger (the danger of a fight) that resulted in harm to the plaintiff (the patron causing injury to the plaintiff by throwing drinking glass at the plaintiff). *See also In re Islamorada Fish Co. Tex., L.L.C.*, 319 S.W.3d 908, 910 (Tex. App.—Dallas 2010, no pet.) (similar Dram Shop Act case); *Wilson v. K.W.G., Inc.*, 11-03-00084-CV, 2004 WL 1925599, at *2 (Tex. App.—Eastland Aug. 31, 2004, no pet.) (same).

- *Healthcare Centers of Tex., Inc. v. Rigby*, 97 S.W.3d 610, 620 (Tex. App.—Houston [14th Dist.] 2002, pet. denied), *overruled on other grounds by Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005): the defendant's conduct (allowing a resident—who the defendant knew was a sexual threat to others—to remain at the defendant's nursing home) exposed another resident to danger (the danger of sexual assault) that resulted in harm to the other resident (sexual assault).

Here, Defendant's employees' conduct (cutting Plaintiff's lock) exposed Plaintiff to danger (potential theft) that resulted in the harm Plaintiff suffered and recovered for at trial (the theft of her property from the locker). Accordingly, the Court may not award exemplary damages pursuant to Section 41.005(a), unless a valid exception applies.[4]

### ii. Exception to Section 41.005(a)

After determining that the Section 41.005(a) exemption applies, the parties next dispute whether an exception to the exemption enables the Court to award exemplary damages. Section 41.005(b) reads in relevant part, "(b) The exemption provided by Subsection (a) does not apply

---

4. Plaintiff likely could have separated the criminal theft from Defendant's act had she pursued this case differently. However, by mixing the criminal theft with Defendant's acts in her pleadings, in the jury charge, and through her trial strategy, Plaintiff rendered this case similar to *Rigby* by creating an indivisible injury. *See Rigby*, 97 S.W.3d at 618.

if: (1) the criminal act was committed by an employee of the defendant . . . ." Section 41.005(c) expands on this exception:

> (c) In an action arising out of a criminal act committed by an employee, the employer may be liable for punitive damages but only if:
>
> (1) the principal authorized the doing and the manner of the act;
>
> (2) the agent was unfit and the principal acted with malice in employing or retaining him;
>
> (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or
>
> (4) the employer or a manager of the employer ratified or approved the act.

Unfortunately, the identity of the thief who stole Plaintiff's personal property remains unknown. Therefore, as might be expected, the parties dispute who bears the burden of proving the Subsection (b)(1) exception (Dkt. #73 at pp. 6–7; Dkt. #75 at pp. 8–9; Dkt. #76 at p. 2). Without specifically addressing the issue, at least two courts have placed the burden to prove the exception on the plaintiff. *See Kinney*, 2018 WL 375393, at *3; *Bhatti*, 2016 WL 3880747, at *17; *but see Croxton v. Washington Mut. Bank*, 05-07-00585-CV, 2008 WL 3984048, at *4 (Tex. App.—Dallas Aug. 29, 2008, no pet.) (placing burden on defendants). *Kinney* and *Bhatti* comply with the general rule under Texas law that "'[t]he burden of proving a statutory exception rests on the party seeking the benefit from the exception,' not on the party seeking to avoid that benefit." *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 494 (Tex. 2016) (quoting *Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, INC.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet. denied)). Here, Plaintiff would benefit from establishing the exception as doing so would enable Plaintiff to recover exemplary damages against Defendant. Considering

9

the cited cases, the Court agrees with *Kinney* and *Bhatti*, and finds that Plaintiff bore the burden of proving the Subsection (b)(1) exception at trial. As neither party provided more than mere speculation as to the thief's identity at trial, Plaintiff did meet her burden of proving that Subsection (b)(1) applies. As the exception does not apply, the Court is bound by the Subsection (a) exemption and cannot award exemplary damages in this case. Accordingly, the Court must set aside the exemplary damages award pursuant to Section 41.005(a).[5]

### B. Imputing Gross Negligence on Defendant

Even if the Court's application of Section 41.005(a) is incorrect, the Court would still set aside the exemplary damages award, as the gross negligence of Defendant's employees cannot be imputed on Defendant. At trial, Plaintiff sought to impute the gross negligence of Defendant's employees on Defendant (*See* Dkt. #75 at pp. 1–2, 8–9). The Court's instructions to the jury reflected Plaintiff's argument:

> Plaintiff alleges the negligence of one or more of Defendant's employees rises to the level of gross negligence. . . .
>
> Defendant may be responsible for the gross negligence of one of its employees if:
>
> 1. Defendant authorized the doing and the manner of the act, or
>
> 2. The employee was unfit and Defendant was reckless in employing the employee, or

---

5. Plaintiff incorrectly argues that "[S]ubsection (c) of the act restores punitive damages against the employer if the employee was employed in a managerial capacity and was acting in the scope of employment; or a manager of the employer ratified or approved the act. Both Conditions applied in the instant case." (Dkt. #75 at pp. 8–9). Subsection (c) only applies if Defendant's employee committed the criminal act as specified in Subsection (b)(1). Plaintiff did not prove that Defendant's employee committed the criminal act and, therefore, Subsection (c) does not apply.

Moreover, as discussed in the next section, Plaintiff did not prove that Zach Turner qualified as Defendant's manager for the purposes of proving gross negligence. As a result, even if Subsection (c) applies, Plaintiff did not provide sufficient evidence to meet the elements of Subsection (c).

10

> 3. The employee was employed in a managerial capacity *and* was acting in the scope of employment, or
>
> 4. Defendant or a manager of Defendant ratified or approved the act.
>
> ***A person is a manager or is employed in a managerial capacity if:***
>
> > 1. *that person has authority to employ, direct, and discharge an employee of Defendant; or*
> >
> > 2. *Defendant has confided to that person the management of the whole or a department or division of the business of Defendant.*

(Dkt. #64 at pp. 6–7) (emphasis added).[6]

The pleadings and evidence at trial established that Zach Turner directed another one of Defendant's employees to cut Plaintiff's lock to search for the other gym member's lost keys (Dkt. #73 at pp. 14–16). Plaintiff claims that Mr. Turner qualifies as Defendant's "manager" because (1) Defendant employed Mr. Turner as an "Operation Manager" and (2) Defendant stipulated that Mr. Turner was acting in the course and scope of his employment when he cut Plaintiff's lock (Dkt. #75 at pp. 1–2, 8–9). The Court cannot agree with Plaintiff for two reasons. First, Mr. Turner's title as "Operation Manager" does not qualify him as a manager for the purposes of proving gross negligence under Texas law. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 138 (Tex. 2012) (citations omitted) ("We agree with the court of appeals that Waldrip presented no evidence that Coffee [(Director of Repair Analysis & Support)] was

---

6. The Court's instruction reflects the standard instructions found in Texas Pattern Jury Instructions 10.14 and 115.39, and reflects Texas case law. *See Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 152 (5th Cir. 2017) (quoting *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967)); *Durand v. Moore*, 879 S.W.2d 196, 203 (Tex. App.—Houston [14th Dist.] 1994), *amended on reh'g*, B14-92-01160-CV, 1994 WL 276678 (Tex. App.—Houston [14th Dist.] June 23, 1994, no writ). Plaintiff did not object to the submission of this instruction.

employed by UHI in a managerial capacity. An employee's title alone is not dispositive of whether he is a vice principal.").

Second, although Defendant stipulated that Mr. Turner was acting in the course and scope of his employment at the time he cut Plaintiff's lock, Defendant did not stipulate to any facts concerning Mr. Turner's managerial role. Early in this case, Plaintiff sought to join Mr. Turner by filing a motion for leave to amend complaint (Dkt. #17). Plaintiff argued:

> Plaintiff had not served Zach Turner initially because at this stage in the litigation, it is unclear whether Defendant will argue that Zach Turner was acting outside the scope of his employment when he injured Plaintiff, or whether he was following the policy of Defendant. However, should it be determined that any of Zach Turner's actions were outside of the scope of his employment, some or all of Plaintiff's recovery could be limited to recovery against Zach Turner. If this were to occur and the case were to proceed in federal court without Zach Turner, Plaintiff would have to relitigate the case to achieve a full recovery.

(Dkt. #16 at pp. 2–3). In response, Defendant stipulated:

> Even if the events in question took place exactly as Plaintiff claims, Zach Turner was still clearly acting within the course and scope of his employment. But to avoid any doubt on this subject, 24 Hour Fitness hereby agrees and stipulates that Zach Turner was acting within the course and scope of his employment in connection with the conduct of which Plaintiff complains. This eliminates Plaintiff's sole basis for seeking to join Zach Turner.

(Dkt. #20 at pp. 1–2). Considering Defendant's stipulation, the Court denied Plaintiff leave to add Mr. Turner:

> Plaintiff's basis for adding Turner is contingent on whether Turner acted within the course and scope of his employment with 24 Hour Fitness. Because 24 Hour Fitness, in its response, stipulates that Turner acted within the course and scope of his employment, Plaintiff's basis for adding Turner is eliminated.

(Dkt. #21 at pp. 2–3).[7]

---

7. Plaintiff did not seek to join Mr. Turner to establish that he was a manger for Defendant (*See* Dkt. #16).

Defendant's stipulation satisfied one facet of the Court's gross negligence instruction—Mr. Turner acted in the course and scope of his employment when he cut Plaintiff's lock. However, as Defendant did not stipulate to any facts concerning Mr. Turner's managerial role, Plaintiff was still required to prove the second facet of the Court's instruction—Mr. Turner was a manager or Defendant employed Mr. Tuner in a managerial capacity. Mr. Turner could only be a manager or be employed in a managerial capacity if Plaintiff proved that Mr. Turner (1) had the authority to employ, direct, and discharge employees or (2) that Defendant confided in Turner the management of the whole or a department or division of Defendant's business.

At trial, Plaintiff testified that Mr. Turner "was [Defendant's] manager" and admitted a police report stating the same (Dkt. #75 at p. 1; Dkt. #75-2 at p. 2). Moreover, the evidence showed that Mr. Turner directed one of Defendant's employees to cut Plaintiff's lock (Dkt. #73 at pp. 14–16). This evidence is insufficient as a matter of law to show that Mr. Turner was a manager or Defendant employed Mr. Turner in a managerial capacity because it does not demonstrate that Mr. Turner (1) possessed the authority to employ and discharge employees or (2) that Defendant confided in Turner the management of the whole or a department or division of Defendant's business. Consequently, even if Section 41.005(a) did not require the Court to set aside the exemplary damages award, the Court could would still set aside the award as the jury's gross negligence finding cannot be imputed on Defendant.

**C. Objective and Subjective Components of Plaintiff's Gross Negligence Claim**

Even if the Court is incorrect on all the above, the Court would set aside the exemplary damages award because Plaintiff did prove, as a matter of law, the objective or subjective elements of her gross negligence claim. "Gross negligence is defined as an 'entire want of care which would raise the belief that the act or omission complained of was the result of a conscious

indifference to the right or welfare of the person or persons to be affected by it.'" *Elbar, Inc. v. Claussen*, 774 S.W.2d 45, 48 (Tex. App.—Dallas 1989, writ dism'd) (quoting *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 572 (Tex. 1985); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981)). "Gross negligence consists of both objective and subjective elements." *Waldrip*, 380 S.W.3d at 137 (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001)). In order to establish gross negligence, "[p]laintiffs must prove by clear and convincing evidence that (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 41.001(11); *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006)). "Under the objective component, 'extreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *Id.* (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *Harrison*, 70 S.W.3d at 785). Many courts have described the serious injury under the objective component as one resulting in "'death, grievous physical injury, or financial ruin.'" *Tex. Bank & Tr. Co. v. Zucker*, 6:18-CV-525-JDK, 2019 WL 1922044, at *8 (E.D. Tex. Apr. 8, 2019) (quoting *IP Petroleum Co., Inc. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 897 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)). "The subjective prong, in turn, requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts." *Waldrip*, 380 S.W.3d at 137–38. (citing *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999); *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993)). "The defendant need not have anticipated the precise manner of

harm or to whom the injury would befall to have had awareness of the extreme risk." *Medina v. Zuniga*, -- S.W.3d --, 17-0498, 2019 WL 1868012, at *5 (Tex. Apr. 26, 2019) (citing *Waldrip*, 380 S.W.3d at 139).[8]

Plaintiff maintains that—when viewed objectively—Defendant's conduct of cutting her locker and leaving her wallet vulnerable to theft created an extreme probability of serious injury to Plaintiff:

> Defendant ignores the facts including that whoever took Plaintiff's wallet now had access to her home address, her driver's license, her bank account, her credit cards, and other personal information. The potential for financial ruin was high, as Defendant's own policies suggest. The potential that someone could stalk or attack Plaintiff with this information was also present. Of course, Plaintiff had a job, but that does not mean that she was therefore not vulnerable, both financially and physically.

(Dkt. #75 at p. 6). Although the Court believes that the theft of a wallet creates at least some risk of identity theft or stalking. The theft of a wallet does not objectively create a high probability of identity theft or stalking.

Moreover, the only evidence cited by Plaintiff to show the subjective prong of her gross negligence claim is that Plaintiff, and not Defendant's employees, contacted the police. This evidence alone does not show by clear and convincing evidence that Defendant's employees knew that cutting Plaintiff's lock created an extreme risk of serious injury to Plaintiff.

---

8. The Court finds *Medina* instructive as it demonstrates the high bar that Texas courts require gross negligence claims to meet. *Zuniga*, 2019 WL 1868012. In the case, Medina—a "thoughtless, careless, and risky" driver—drove to his high school on Sunday. *Id.* at *1, 6. Medina then drove off the public street and onto an entrance drive of the school's parking lot, where he stopped to talk to two students through his passenger window. *Id.* at *1. Another driver honked at Medina because he blocked the entrance to the parking lot. *Id.* at *1. Medina reversed his vehicle toward the honking driver to "mess" with them, before driving forward. *Id.* at *1. Medina then rapidly accelerated in the school's parking lot, which contained at least a few people. *Id.* at *1, 6–8. As he approached the parking lot exit, Medina decreased his speed slightly. *Id.* at *1. However, while exiting the parking lot, Medina did not stop, only looked left, and likely drove on part of the sidewalk. *Id.* at *1. Reviewing this evidence, the Texas Supreme Court found no evidence supporting the objective component of gross negligence. *Id.* at *6–8.

Therefore, the Court finds that Plaintiff failed to prove that Defendant's employees' conduct was grossly negligent.

### D. Award of Actual Damages

Seeking to avoid all consequences for its employees' acts, Defendant next argues that the jury's $200.00 actual damages award is improper due to the Court's previous summary-judgment order (Dkt. #73 at pp. 17–18). In this order, the Court found that the membership agreement between Plaintiff and Defendant contained a valid and enforceable negligence release (Dkt. #28 at pp. 5–12, 16). Consequently, the Court granted summary judgment for Defendant on Plaintiff's negligence claim. Defendant explains that because "[t]he loss of Plaintiff's property, for which the jury awarded actual damages, relates solely to the negligence claim," Plaintiff cannot recover the actual damages awarded by the jury. The Court disagrees as Plaintiff can recover her actual damages under her invasion of privacy claim.

Defendant first contends that Plaintiff did not seek to recover actual damages under her invasion of privacy claim. However, in her First Amended Petition, Plaintiff specifically sought actual damages under her invasion of privacy claim (Dkt. #4 ¶ 12).[9] Plaintiff also claimed actual damages under all three of her claims in the First Amended Joint Final Pre-Trial Order:

> Plaintiff claims that the staff's actions were an invasion of her privacy and that some items were then stolen from the locker. Plaintiff has sued 24 Hour Fitness for alleged negligence, gross negligence, and invasion of privacy. She is claiming actual and exemplary damages.

(Dkt. #56 at p. 2). Although Plaintiff did not specifically mention "lost property" under her invasion of privacy claim, Plaintiff clearly sought to recover her lost property—as actual

---

9. Defendant cites Plaintiff's Second Amended Complaint (Dkt. #75 at p. 17). As explained previously, the Court denied Plaintiff's motion for leave to file her Second Amended Complaint (Dkt. #21). Therefore, Plaintiff's operative pleading at the time of trial was her First Amended Petition (Dkt. #4). Even so, Plaintiff also sought actual damages under her invasion of privacy claim in her proposed Second Amended Complaint (Dkt. #16 ¶ 12).

damages—under both her invasion of privacy and negligence claims. Accordingly, the Court's summary judgment order does not bar Plaintiff from recovering her actual damages because Plaintiff sought to recover her lost property through her invasion of privacy claim.

Defendant next argues that because the invasion of privacy occurred when Defendant's employees cut Plaintiff's lock, the actual damages awarded can only relate to Plaintiff's negligence claim:

> The focus of the invasion-of-privacy claim is [Plaintiff's] contention that [her] privacy was breached when [Defendant's] staff accessed her locker. For example, if [Defendant's] staff had cut the lock to Plaintiff's locker to search for the keys, but then either placed a new lock on the locker or took Plaintiff's property to the front for safekeeping, the invasion-of-privacy claim would remain unaffected. . . . Thus, the actual damages found by the jury for the loss of Plaintiff's property relates solely to the negligence cause of action.

(Dkt. #73 at pp. 17–18) (citations omitted).

Defendant's argument is unpersuasive for two reasons. First, the argument is irrelevant because Defendant's employees did not take any action to protect Plaintiff's property after invading her privacy. Second, Defendant mistakenly assumes that damages cannot result from more than one act. In this case, Plaintiff recovered $200.00 representing the market value of the property stolen from the locker. The property could not have been stolen from the locker had Defendant's employees not (1) invaded Plaintiff's privacy by cutting her lock *and* (2) failed to take any steps to protect Plaintiff's property after cutting her lock. In other words, without the first tortious act, there would be no second tortious act or actual damages in this case. Therefore, as Plaintiff's actual damages directly flowed from both acts, Plaintiff may recover actual damages under her invasion of privacy claim.

17

## II. Defendant's Motion for New Trial

Defendant argues in its motion for new trial that if the Court denies its motion for judgment as a matter of law, the Court should order a new trial on exemplary damages and for remittitur (Dkt. #74 at p. 1). Defendant "seeks this relief because (a) the amount of exemplary damages is excessive and constitutionally impermissible and (b) the jury's gross-negligence finding is against the greater weight of the evidence." (Dkt. #74). As the Court addressed these issues above, the Court finds Defendant's motion for new trial should be denied as moot (Dkt. #74).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law is **GRANTED IN PART** and **DENIED IN PART** (Dkt. #73). Specifically, the Court sets aside the $35,000.00 exemplary damages award in the Judgment on Jury Verdict pursuant to Section 41.005(a) of the Texas Civil Practice and Remedies Code and Federal Rule of Civil Procedure 59 (Dkt. #72). The Court does not set aside the $200.00 actual damages award. It is further **ORDERED** that Defendant's Motion for New Trial is **DENIED** as **MOOT** (Dkt. #74).

**IT IS SO ORDERED.**

SIGNED this 11th day of July, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE